## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATE OF GEORGIA,**<br>c/o Strickland Brockington Lewis LLP<br>1170 Peachtree Street NE<br>Suite 2200<br>Atlanta, GA 30309-7200<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ERIC H. HOLDER, JR., in his official<br>capacity as Attorney General of the<br>United States,**<br>950 Pennsylvania Avenue, NW<br>Washington DC 20350<br><br>    **Defendant.** | **CIVIL ACTION FILE**<br><br>**NO.**_____<br><br>**THREE JUDGE PANEL** |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW THE STATE OF GEORGIA and, pursuant to Section 5 of

the Voting Rights Act of 1965, 42 U.S.C. § 1973c (hereinafter, "Section 5"), seeks

a declaratory judgment that Act 143 of the 2009 Georgia General Assembly ("Act

143"), along with (1) the regulations promulgated pursuant to the terms of Act 143

by the Secretary of State (Ga. Comp. R. & Regs. r. 590-8-1-.02), (2) regulations

promulgated pursuant to the terms of Act 143 by the State Election Board (Ga.

Comp. R. & Regs. r. 183-1-6-.06), (3) a voter registration form revised to comport

with Act 143, (4) the notice to applicants who have not provided satisfactory

1

evidence of citizenship with their voter registration application, (5) the notice to applicants who request a hearing, and (6) the notice provided to voters who cast a provisional ballot, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race or color under Section 5. Alternatively, the State of Georgia seeks a declaration that Section 5, as most recently amended and renewed in the Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights Act Reauthorization and Amendments Act of 2006, is unconstitutional and its enforcement should be permanently enjoined.

1.

This action is brought by Plaintiff the State of Georgia ("Georgia" or "the State") pursuant to Section 5 and 28 U.S.C. § 2201.

2.

Georgia is a State within the United States of America authorized to bring this action on behalf of itself and its citizens.

3.

Defendant Eric H. Holder, Jr., Attorney General of the United States, is charged with certain responsibilities pursuant to Section 5, including the defense of a Section 5 declaratory judgment action brought in the United States District Court for the District of Columbia.

4.

Section 5 prohibits a State or political subdivision subject to Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b) (hereinafter, "Section 4"), from enforcing "any voting qualification or prerequisite to voting; or standard, practice, or procedure with respect to voting different from that in force and effect on November 1, 1964" unless it has obtained a declaratory judgment from the United States District Court for the District of Columbia that such change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color" or has submitted the proposed change to the Attorney General of the United States and the Attorney General has not objected to it.

5.

Under 42 U.S.C. § 1973b(b), the State of Georgia is a covered jurisdiction subject to the preclearance requirement of Section 5 because in 1965 (1) the Attorney General determined that Georgia "maintained on November 1, 1964, any test or device," and (2) the Director of the Census determined "that less than 50 per centum of the persons of voting age residing therein were registered on November 1, 1964, or that less than 50 per centum of such persons voted in the presidential election of November 1964."

6.

Forty-five years later, based on the very same formula originally implemented in 1965 and still found in Section 4, Georgia remains a covered jurisdiction subject to the preclearance requirements of Section 5, originally intended as a temporary, emergency provision.

7.

Georgia brings this action pursuant to Section 5 and 28 U.S.C. § 2201, seeking declaratory judgment that the Citizenship Verification Process as defined below neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, thereby allowing the State to enforce federal and state laws relating to voter registration and verification.

8.

The Court has subject matter jurisdiction of this action under Section 5 and 28 U.S.C. § 1331 because an actual controversy exists between the parties regarding the State's ability to enforce certain procedures at issue in this litigation.

9.

Venue and jurisdiction are proper in this Court pursuant to Section 5 and 28 U.S.C. § 2284.

10.

This action is properly determinable by a district court of three judges in accordance with Section 5 and 28 U.S.C. § 2284.

## FACTS

Current Requirements Regarding Citizenship and Verification of Same

11.

Both the Georgia Constitution and Georgia statutory law require that a person be a citizen of the United States in order to be eligible to register and vote. GA. CONST. Art. II, § 1, ¶ 2; O.C.G.A. § 21-2-216(a)(2).

12.

Federal law also requires that a person be a citizen of the United States in order to register and vote.  42 U.S.C. § 15483(b)(4)(A)(i).

13.

Although both Georgia and federal law require that voters be citizens of the United States, Georgia's current benchmark for determining whether an applicant for voter registration is a U.S. citizen consists only of database matching through a verification process required by the Help America Vote Act of 2002 ("HAVA")[1] and the voter's self-declaration on the voter registration application.

---

[1]  The Department of Justice precleared this verification process ("HAVA Verification Process") on August 18, 2010.  DOJ Submission No. 2010-3259.

14.

In spite of the legal requirements in Georgia and federal law, non-citizens have registered to vote in Georgia and have voted in Georgia elections.

15.

On January 24, 2005, the Department of Justice precleared Arizona's citizenship verification process (Ariz. Rev. Stat. 16-166(F)(1-6) (2008)), a very similar statute for verifying citizenship of voter registration applicants.

Passage of Act 143 and Attendant Rules

16.

In 2009, the Georgia General Assembly passed Senate Bill 86, legislation to ensure that each newly-registered Georgia voter was, in fact, a citizen of the United States at the time he or she applied to register to vote.

17.

Senate Bill 86 was introduced in the Georgia State Senate on February 3, 2009 and assigned to the Senate Ethics Committee, which considers election-related legislation.

18.

The Senate Ethics Committee reviewed Senate Bill 86, conducted a public hearing on the bill and subsequently amended and passed Senate Bill 86 on February 17, 2009.

19.

On March 3, 2009, Senate Bill 86 passed on the floor of the Georgia Senate.

20.

On March 25, 2009, the House Government Affairs Committee considered and passed Senate Bill 86 during a public meeting.

21.

On April 3, 2009, the House of Representatives considered Senate Bill 86, amended the bill and passed it with amendments.

22.

The Senate agreed to the House amendments later on April 3, 2009, and the bill was sent to the Governor for his signature.

23.

In passing Senate Bill 86, the Georgia General Assembly acted pursuant to its lawmaking authority under Article III, Section V of the Georgia Constitution.

24.

Pursuant to his authority under Article V, Section II of the Georgia Constitution, the Governor signed Senate Bill 86 on May 5, 2009, designating it as Act 143 for 2009. The text of Act 143 is attached hereto Exhibit 1 and incorporated by reference.

25.

Following enactment of Act 143, the Georgia State Election Board ("SEB") promulgated a rule implementing Act 143, as referenced in O.C.G.A. § 21-2-216(g)(2)(G) (the "SEB rule").  The SEB rule is located at Ga. Comp. R. & Regs. r. 183-1-6-.06, attached hereto as Exhibit 2 and incorporated by reference.

26.

The SEB promulgated the SEB rule pursuant to its authority under O.C.G.A. §§ 21-2-31 and 21-2-50 and in accordance with the procedures outlined in the Georgia Administrative Procedure Act, O.C.G.A. §§ 50-13-4 and 50-13-5.

27.

Following the enactment of Act 143, the Secretary of State promulgated a rule implementing Act 143, as referenced in O.C.G.A. § 21-2-216(g)(7) (the "Secretary of State rule").  The Secretary of State rule is located at Ga. Comp. R. & Regs. r. 590-8-1-.02, attached hereto as Exhibit 3 and incorporated by reference.

28.

The Secretary of State promulgated the Secretary of State rule pursuant to her authority under O.C.G.A. § 21-2-216 and in accordance with the procedures outlined in the Georgia Administrative Procedure Act, O.C.G.A. §§ 50-13-4 and 50-13-5.

29.

Following the passage of Act 143 and the implementing rules, in accordance with the authority provided under O.C.G.A. § 21-2-219, the Secretary of State's office revised the Georgia Voter Registration Application to reflect the requirements of Act 143. The updated voter registration form is attached hereto as Exhibit 4 and incorporated by reference.

30.

The Secretary of State's office created the notice to applicants provided for in the SEB rule in the form of the letter attached as Exhibit 5 and incorporated by reference.

31.

The Secretary of State's office created the notice to applicants who request a hearing provided for in the SEB rule in the form of the letter attached as Exhibit 6 and incorporated by reference.

32.

The Secretary of State's office created the notice to be provided to voters who cast a provisional ballot provided for in the SEB rule attached as Exhibit 7 and incorporated by reference.

## The Citizenship Verification Process Sought to be Precleared

33.

Pursuant to (1) the provisions of Act 143, (2) the SEB rule, (3) the Secretary

of State rule, (4) the revised Georgia Voter Registration Application, (5) the letter

attached as Exhibit 5, (6) the notice to applicants who request a hearing attached as

Exhibit 6, and (7) the notice provided to voters who cast a provisional ballot

attached as Exhibit 7 (collectively referred to as the "Citizenship Verification

Process"), the State of Georgia will be able to confirm that all new Georgia voter

registrants are citizens of the United States.

34.

The Citizenship Verification Process applies to all individuals, regardless of

race, who register to vote after the Citizenship Verification Process receives

preclearance or a ruling by this Court under Count II that preclearance is not

required.

35.

Under the provisions of HAVA, each applicant must affirmatively state on

the voter registration application that he or she is a U.S. citizen.

36.

Georgia's Citizenship Verification Process incorporates the HAVA requirement of an affirmative statement of citizenship on the voter registration application.

37.

If an applicant states on the voter registration application that he or she is not a U.S. citizen, then, in accordance with both HAVA and the Citizenship Verification Process, that application is rejected.

38.

In addition to an affirmative statement of United States citizenship, the Citizenship Verification Process requires that each new registrant provide satisfactory evidence of citizenship before he or she is added to the official list of electors.

39.

Under the Citizenship Verification Process, the primary way for an applicant to provide satisfactory evidence of citizenship is to provide his or her Georgia driver's license number or identification card number issued by the Georgia Department of Driver Services ("DDS").

40.

Under the Citizenship Verification Process, if an applicant provides a Georgia driver's license number or identification card number issued by DDS with his or her voter registration application, the Secretary of State will forward the applicant's information to DDS for confirmation that the applicant has provided satisfactory evidence of citizenship to DDS.

41.

If DDS records reflect that the applicant has previously provided satisfactory evidence of citizenship to DDS, that information will be provided to the Secretary of State, and no additional evidence of citizenship will be required from the applicant; the applicant will be confirmed to be a U.S. citizen in the voter registration database and added to the official list of electors.

42.

If DDS records do not indicate that an individual is a citizen of the United States, that information will be provided to the Secretary of State, and the Secretary of State will then attempt to verify the individual's citizenship status through the SAVE program.[2]

---

[2] The Secretary of State will negotiate a Memorandum of Understanding with the Department of Homeland Security regarding the use of SAVE.

43.

If the SAVE program confirms that an applicant is a citizen, the applicant will be confirmed to be a U.S. citizen in the voter registration database and added to the official list of electors.

44.

Notwithstanding any other requirement under state or federal law, when registering to vote, applicants are not required to have or to use a Georgia driver's license or DDS-issued identification card to demonstrate satisfactory evidence of citizenship but may also demonstrate satisfactory evidence of citizenship as follows:

(a) by showing a driver's license or identification card from another state, if that license or card states that the applicant is a U.S. Citizen. Any State whose driver's license and identification cards comply with the requirements of the federal REAL ID Act of 2005 contain such a statement; or

(b) by submitting any of the following documents: a birth certificate, a U.S. passport, naturalization documents, a verified alien registration number, any document proving citizenship under the Immigration Reform and Control Act of 1986, a Bureau of Indian Affairs card number, a tribal treaty card number, a tribal enrollment number, or other forms as provided in the SEB rule, Exhibit 2.

45.

If an applicant is unable to provide the satisfactory evidence of citizenship

required by the statute or regulations at the time of applying for registration, (a) the

applicant may request a hearing with the appropriate county board of registrars for

consideration of additional types of documentation and such hearing will be held

or (b) if an applicant chooses not to request a hearing at the time he or she is

applying for registration, the applicant will receive a letter from the board of

registrars (Exhibit 5 attached) outlining the next steps, including a hearing to

consider other types of documentation.

46.

Pursuant to the procedure outlined in the SEB rule, if an applicant does not

provide satisfactory evidence of citizenship with his or her original voter

application and does not request a hearing when applying, the county board of

registrars sends notice within 10 days of receipt of the application by

nonforwardable, first-class mail to the mailing address listed on the application to

inform the applicant of the missing information and that the application will be

rejected if satisfactory evidence of citizenship is not provided to the board of

registrars within 30 days from the date of the notice.  A copy of the notice is

attached hereto as Exhibit 5.

47.

A voter registration applicant may provide satisfactory evidence of citizenship to the appropriate county board of registrars by United States mail, facsimile, electronic mail or personal delivery.

48.

If the applicant requests a hearing at the time of his or her application for registration, the board conducts a hearing on the applicant's citizenship after providing the notice attached as Exhibit 6.

49.

The applicant is not required to attend the board of registrars' hearing and may submit any evidence he or she wishes for the board to consider.

50.

The board of registrars is empowered to consider additional forms of documentation beyond the statutory and regulatory list at the hearing. *See* Exhibit 2.

51.

If the individual provides the information outlined in the SEB rule or the board of registrars determines that the applicant is a U.S. citizen based on the documentation provided at the hearing, the applicant's voter registration application is accepted and the voter added to the official list of electors.

52.

If the individual registers within 30 days of a primary or general election and

does not provide satisfactory evidence of citizenship with the application, the

individual may either (a) present satisfactory evidence of citizenship at the time he

or she requests a ballot or (b) vote a provisional ballot and provide satisfactory

evidence of citizenship within the time allotted.  Any individual electing to cast a

provisional ballot will be given the notice attached as Exhibit 7.

53.

If satisfactory evidence of United States citizenship is not provided, the

applicant's voter registration application is rejected and the voter is not added to

the official list of electors.

54.

An applicant may appeal the decision of the board of registrars related to

citizenship status to the superior court, in accordance with the already-precleared

statutory process set forth in O.C.G.A. § 21-2-228(f).

55.

If the applicant's voter registration application is rejected for failure to

provide satisfactory evidence of United States citizenship, the applicant may

reapply at any time.

56.

Under Section 5, the provisions of the Citizenship Verification Process cannot be implemented by the State of Georgia unless and until this Court enters a declaratory judgment, as requested by this Complaint, or unless this Court determines that Section 5 is unconstitutional.

57.

The provisions of the Citizenship Verification Process have not yet been implemented by the State of Georgia.

58.

The HAVA Verification Process is the benchmark for purposes of Section 5.

## COUNT I – DECLARATORY JUDGMENT

59.

The allegations of Paragraphs 1 through 58 are incorporated as if fully set forth herein.

60.

The State of Georgia did not adopt and will not use the Citizenship Verification Process for any discriminatory purpose but simply to ensure that the United States citizenship requirements of both Georgia law and federal law are enforced.

61.

Based on Georgia's history of non-citizens registering to vote <u>and</u> voting in elections, the Citizenship Verification Process is a reasonable remedy with the least possible burden on new applicants.

62.

The Citizenship Verification Process, when compared to Georgia's existing or "benchmark" verification process, does not lead to a "retrogression" in the position of racial minorities in that it does not have the effect of denying or abridging the right to vote on account of race or color.

63.

The Citizenship Verification Process accordingly neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color.

64.

The Citizenship Verification Process does not and will not prohibit any citizen of the United States from electing his or her preferred candidate of choice.

65.

The Citizenship Verification Process applies uniformly to all new registrants regardless of race or color.

66.

The Citizenship Verification Process does not result in any discriminatory effect that is statistically significant (*i.e.*, more than *de minimis*).

67.

The State of Georgia is entitled to a judgment that the Citizenship Verification Process neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color under Section 5 of the Voting Rights Act of 1965, as amended, and that such legislation, regulations, policies, and forms may be implemented without further delay.

## COUNT II – DECLARATORY JUDGMENT

68.

The allegations of Paragraphs 1 through 67 are incorporated as if fully set forth herein.

69.

If this Court declines to enter a declaratory judgment that the Citizenship Verification Process neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color under Section 5, then, alternatively, the State of Georgia seeks declaratory judgment that the continued application of Section 5 to the State is an unconstitutional imposition on the sovereignty of the State of Georgia, is beyond Congress's authority, and therefore

is a violation of the Tenth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

70.

When first adopted in 1965, Section 5 was a temporary measure necessary to address pervasive racial discrimination in the election process which existed in some areas of the country, including Georgia.

71.

When Congress originally enacted the preclearance requirements of Section 5, and even as late as the reauthorization of those provisions in 1982, the conditions justifying the imposition of the preclearance requirements upon Georgia either existed or existed in very recent memory.

72.

However, when reauthorizing Section 5 in 2006, Congress continued to base preclearance coverage on a formula based on the 1964, 1968, and 1972 Presidential elections, leaving the State of Georgia in the status of a covered jurisdiction, while not covering other States or portions of States that would have been covered under any modern measure that Congress might reasonably have imposed.

73.

The State of Georgia and its voters are being punished for discriminatory conditions that existed more than forty-five years ago but have long since been remedied, while jurisdictions where similar discriminatory conditions currently *do* exist are not subject to any federal interference under Section 5 simply because the current discriminatory conditions did not exist or were overlooked when Section 5 coverage was determined more than forty-five years ago.

74.

Individuals who were not even alive when the Voting Rights Act was passed are voting and are penalized for those conditions forty-five years ago.

75.

Congress' 2007 reauthorization of Section 5 was a disproportionate, irrational, and incongruous remedy for a perceived harm, measured by a more than forty-five year old formula, which, if updated to today, would not cover the State of Georgia.

76.

Unlike other provisions of the Voting Rights Act, Section 5 is no longer a "congruent and proportional" remedial exercise of Congress's enforcement power.

77.

Unlike Section 5, Section 2 of the Voting Rights Act is not temporary, applies to all States uniformly, and can be used to address the same discriminatory voting practices Section 5 was designed to prevent.

78.

Therefore, as applied to the State of Georgia, the preclearance requirements of Section 5 violate the Tenth, Fourteenth, and Fifteenth Amendments to the United States Constitution.

79.

Georgia voters and the State itself are harmed by the overreach of Section 5 because the State cannot make *any* adjustments to *any* elections practice or procedure without the prior approval of the federal government, despite the fact that there is no current cause for such oversight.

80.

Continued imposition of the preclearance requirement on Georgia hinders the right of Georgia voters to decide the manner in which their representation at the local level will be determined—that is, to alter the manner and procedures by which their representatives in the State are elected—because the preclearance procedures are costly and burdensome.

81.

Furthermore, minority voters in the State of Georgia are harmed, not aided, by Section 5 coverage, because they are effectively denied the ability to control, through their elected representatives, the method by which that representation is to be maintained and the procedures by which elections will take place.

82.

Bailout under 42 U.S.C. § 1973c is not an option for the State of Georgia because, within the last ten years, the DOJ lodged objections against the State's original submission and request for reconsideration of the Georgia HAVA Verification Process (which was later precleared) and against voting changes of four subjurisdictions within the State of Georgia.

83.

The State of Georgia has almost 900 subjurisdictions.

84.

The State of Georgia has no operational control over any of its subjurisidictions, either generally or specifically with respect to the election practices and procedures in those subjurisdictions.

85.

As applied to the State of Georgia, Section 5 lacks any continuing justification and is nothing more than a scarlet letter that Congress, without any

cognizable justification, has chosen to continue to place on the State to punish it for conditions that existed more than forty-five years ago but do not exist today.

86.

Congress cannot forever rely on findings of conditions that existed forty-five years ago to continue to justify the use of its Fifteenth Amendment enforcement power in a way that infringes on the rights of an entire generation of voters who were not even alive when those discriminatory practices were ended.

WHEREFORE, the State of Georgia respectfully prays that this Court:

(A)   Convene a three-judge District Court to hear the matters raised by the State of Georgia's Complaint;

(B)   Enter such other and further orders as may be necessary during the pendency of this case to ensure that it be handled as expeditiously as possible;

(C)   Enter a declaratory judgment that the Citizenship Verification Process (including Act 143, the Secretary of State rule, the SEB rule, the updated voter registration form, and the various notices to applicants attached hereto) neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color, and that each of the statutes, regulations, policies, and forms at issue may be enforced by Plaintiff without any impediment on account of Section 5 of the Voting Rights Act of 1965, as amended;

(E)     In the event the Court finds the Citizenship Verification Process (including Act 143, the Secretary of State rule, the SEB rule, the updated voter registration form, and the various notices to applicants attached hereto) does not meet the requirements for preclearance under Section 5, enter a declaratory judgment that Section 5 is an unconstitutional extension of Congress's enforcement power to remedy past violations of the Fifteenth Amendment and enjoin further enforcement of Section 5; and

(F)     Grant the State of Georgia such other, further, and different relief as this Court may deem just and proper.

This 12th day of November, 2010.

Respectfully submitted,

Anne W. Lewis
Georgia Bar No. 737490
*Special Attorney General for the State of Georgia*
Frank B. Strickland
Georgia Bar No. 687600
*Deputy Special Attorney General for the State of Georgia*
Bryan P. Tyson
Georgia Bar No. 515411
*Deputy Special Attorney General for the State of Georgia*
STRICKLAND BROCKINGTON
     LEWIS LLP

Midtown Proscenium Suite 2200
1170 Peachtree Street, NE
Atlanta, Georgia  30309
Telephone: 678.347.2200
Facsimile:  678.347.2210

*Special Attorneys General for the
State of Georgia*